**In re MOLD MAKERS, INC., Debtor.**

**No. 88 B 31701.**

United States Bankruptcy Court, N.D. Illinois, W.D.

Dec. 29, 1989.

Gary C. Flanders, Rockford, Ill., for debtor.

Joel R. Nathan, Asst. U.S. Atty., Chicago, Ill., for I.R.S.

## MEMORANDUM OPINION
## AND ORDER

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This matter comes before the Court on an Objection to Confirmation, filed by the United States of America, Internal Revenue Service (IRS). The Debtor, Mold Makers, Inc., is represented by Attorney Gary C. Flanders. The IRS is represented by Assistant United States Attorney Joel R. Nathan.

This Memorandum Opinion and Order shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

On November 23, 1988, the Debtor filed a Chapter 11 Petition, listing the IRS as holding a priority claim for Employee Withholding and F.I.C.A. taxes in the amount of $81,000.00 (disputed) and a secured claim in the same amount. On January 23, 1989, the IRS filed a Proof of Claim which indicated that $89,032.73 was owed by the Debtor, $7,595.53 as an unsecured priority tax claim and the remainder as a secured claim.

The Debtor filed a Plan of Reorganization, which treated the claims of the IRS as follows:

Class 5: The secured priority claim of the Internal Revenue Service shall be paid in full by equal monthly installments over a period not exceeding six (6) years after the date of assessment of said claim, with interest as allowed by the Internal Revenue Code. Payments made by the Debtor corporation to the Internal Revenue Service under the Plan shall be applied first to the trust fund portion of the Debtor corporation's tax liability, and shall be deemed voluntary for purposes of the 100% assessment against responsible officers and employees under Internal Revenue Code Section 6672.

The IRS filed an Objection to this provision of the Debtor's Plan of Reorganization, arguing that the Debtor was attempting to direct the payment of the taxes in a manner inconsistent with, and precluded by, principles of Federal Tax Law. The parties have waived oral arguments and have submitted the issue to the Court on briefs. The Court having reviewed the briefs, the issue is ready for decision.

The Internal Revenue Code requires employers to withhold monies from an employee's wages for, among other things, income tax and social security taxes owed by their employees. *See,* 26 U.S.C. § 3402(a) (1982). These funds are to be held "in trust" for the United States, and parties who are responsible for their collection and payment are personally liable if the employers fail to pay. *See,* 26 U.S.C. § 6672 (1982). The persons obligated to collect the funds and make payments, commonly referred to as "responsible persons," are eager to have these debts paid first, so that if the reorganization fails, their liability is extinguished.

The IRS has administratively adopted the position that tax payments made voluntarily by a taxpayer may be allocated to taxes due in the manner chosen by the taxpayer, but payments made "involuntarily" are to be allocated as the IRS deems appropriate. This procedure was accepted by the court

in the oft-cited case *Amos v. Commissioner of Internal Revenue*, 47 TC 65, 69 (1966). In that case, the court held that "an involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor." Hence, the IRS naturally takes the position that payment of "trust fund" taxes pursuant to a plan of reorganization is an involuntary act and subject to the allocation chosen by the IRS, in order to maintain two sources of payment.

■ Several courts of appeals have addressed this issue and found that payments made pursuant to a Chapter 11 plan of reorganization are involuntary. *See, In re DuCharmes & Co.*, 852 F.2d 194 (6th Cir. 1988); *In re Ribs–R–Us, Inc.*, 828 F.2d 199 (3rd Cir.1987). Another court has held that payments made by a debtor to the IRS post-petition but pre-confirmation are involuntary payments. *See, In re Technical Knockout Graphics, Inc.*, 833 F.2d 797 (9th Cir.1987). These courts held that payments made in bankruptcy, and subject to court approval, were involuntary, thereby precluding the debtor from directing their allocation among trust fund and non-trust fund taxes.

The court in *In re A & B Heating & Air Conditioning, Inc.*, 823 F.2d 462 (11th Cir. 1987), *vacated and remanded for consideration of mootness*, 486 U.S. 1002, 108 S.Ct. 1724, 100 L.Ed.2d 189 (1988), found that payments on taxes pursuant to plan of reorganization may be voluntary depending on the circumstances of each case. This Court adopted a case by case approach, which has been applied by several bankruptcy courts. *See, In re Hineline*, 57 B.R. 248 (Bankr.N.D.Ohio, 1986); *In re Lifescape, Inc.*, 54 B.R. 526 (Bankr.D.Col. 1985).

The Seventh Circuit has not addressed this issue in the context of a Chapter 11, but has interpreted *Amos* under similar circumstances in *Muntwyler v. United States*, 703 F.2d 1030 (7th Cir.1983). In *Muntwyler*, the assets of a corporation were assigned to a trustee for the benefit of creditors. The corporation had both trust fund and non-trust fund tax liabilities. After the IRS tendered a claim with the trustee, the trustee presented payment to the IRS with the direction that they be applied to the trust fund taxes. The IRS accepted payment but ignored the trustee's directions and later assessed taxes against the president and sole shareholder of the company for trust fund taxes unpaid.

The Seventh Circuit found that the payments made to the IRS were voluntary and their allocations were properly directed by the trustee. The court interpreted the definitions of unvoluntary in *Amos v. Commissioner of Internal Revenue* as one made pursuant to judicial action or some form of administrative seizure.

> The distinction between a voluntary and involuntary payment in *Amos* and all the other cases is not made on the basis of the presence of administrative action alone, but rather the presence of court action or administrative action resulting in an actual seizure of property or money as in a levy.

703 F.2d at 1033. The filing of a claim or other administrative action short of seizure was found to be insufficient to meet the definition of involuntary.

The court distinguished those cases involving payments made in bankruptcy on the basis that in those cases court action was involved. The court also observed that the Government may have been correct had the corporation been in bankruptcy. *See*, 703 F.2d at 1034, n. 2.

The *Muntwyler* decision was applied to the present issue in bankruptcy context in *In re Avildsen Tools and Machines, Inc.*, 40 B.R. 253 (N.D.Ill.1984), *affm'd*, 794 F.2d 1248 (7th Cir.1986). In *Avildsen*, the District Court reversed the Bankruptcy Court and held that payments made by the debtor to the IRS after the sale of the debtor's asset was confirmed by the Bankruptcy Court were involuntary and not subject to allocation by the debtor. The court noted that the *Muntwyler* court explicitly distinguished the bankruptcy proceeding from that of an assignment for the benefit of creditors. The court found that the bank-

ruptcy context provided the necessary "legal proceeding" noted in *Amos* to warrant the characterization of the payments as involuntary.

In light of this authority, the Court finds that payments made to the IRS pursuant to the Debtor's Plan of Reorganization are involuntary for purposes of applying the principles enunciated in *Amos v. Commissioner of Internal Revenue,* supra. Indeed, most courts would agree that the characteristics of a Chapter 11 case include those recognized by *Amos* as supporting the imposition of an "involuntary" label to payments made by the debtor. The question remains, however, whether *Muntwyler* and *Avildsen* preclude the court from ordering a different allocation than that chosen by the IRS.

■ Although not addressed by the Debtor, the Court observes that there is authority which supports the conclusion that the Court may require certain allocations of payments if consistent with the policy of the Bankruptcy Code. The court in *In re Energy Resources Co., Inc.,* 871 F.2d 223 (1st Cir.1989), *cert. granted,* —— U.S. ——, 110 S.Ct. 402, 107 L.Ed.2d 369 (1989) held that the voluntary/involuntary distinction was irrelevant since bankruptcy courts have power to adjust and allocate the debts owed to the IRS under the Bankruptcy Code. The Court observed that bankruptcy courts have long had broad equitable powers to address the wide variety of problems arising out of the administration of the estate, citing *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939) and noted that Section 105 of the Code explicitly grants such powers. *See,* 11 U.S.C. § 105(b). Other courts have followed the rationale of *Energy Resources,* but have reached differing results. *Compare, In re Greenberg,* 105 B.R. 691 (Bankr.M.D.Fla.1989) with *In re Gilley Consulting Engineers, Inc.,* 105 B.R. 734 (Bankr.N.D.Ga.1989).

This Court is persuaded that the *Muntwyler* decision does not preclude the Court from asserting the equitable powers granted pursuant to § 105. The authority of the bankruptcy court pursuant to this section and judicial decisions was not at issue in the case before the Seventh Cir-

cuit. Moreover, a close reading of *Avildsen* suggests that the court in that case was not confronted with the issue of whether the Bankruptcy Code could supercede the administrative policies of the IRS concerning allocation of tax payments. Although the policy argument raised in *Energy Resources* favoring reorganization rather than liquidation was impliedly refuted in *Avildsen,* when the court found that the distinctions between a liquidation and a reorganization in bankruptcy are irrelevant to the tax allocation issue, the court did not address Section 105 specifically. Consequently, this Court is not precluded from reviewing whether the Court may order certain allocations of payments, whether to the IRS or any other entity, when consistent with the provisions and spirit of the Bankruptcy Code.

The Court is persuaded that bankruptcy courts have authority to order the payment of various debt in a manner consistent with the language and spirit of the Bankruptcy Code. The *Energy Resources* court correctly noted that the bankruptcy court's equitable powers have long been recognized by the courts, *Johnson v. First National Bank of Montevideo,* 719 F.2d 270 (8th Cir.1983), which is codified in Section 105 of the Code. Moreover, nothing in the statutory language of the Bankruptcy Code or the Internal Revenue Code requires different treatment for the IRS. cf. 11 U.S.C. § 505. Hence, the Court finds that the Court has authority to approve the allocation of payments to the IRS under the Bankruptcy Code.

■ However, while the statutory analysis in *Energy Resources* is persuasive, the policy reasons for allowing a debtor to use the bankruptcy court's authority are not. The Court in *Energy Resources* reasoned that if a debtor could not allocate payments to trust fund tax debts, management would seek immediate liquidation rather than fund the reorganization, to insure that all trust fund taxes are paid. This may be a correct observation of the economic realities in some circumstances, but it can hardly be said to be supported by the provisions of the Bankruptcy Code and stretches too far the bankruptcy policy of promoting reorganization of a debtor's financial affairs.

In addition, the Court is not convinced that a responsible person would actually fund a reorganization because a corporate debtor could direct allocations of payments to the IRS. Indeed, it has been observed that allowing a debtor to direct the allocation of tax payments would only provide incentive to debtors to file Chapter 11's for the sole purpose of avoiding the allocation made by the taxing bodies. cf. *In re Gilley Consulting Engineers, Inc.*, supra. Hence, allowance of such a procedure would most likely promote abuse rather than successful reorganization.

In short, nothing in the Bankruptcy Code or its underlying policy requires or even addresses the relief requested by the Debtor. The Court will not grant such relief merely on broad speculation that reorganization would be enhanced because of a benefit to a third party, unrelated to the bankruptcy case. Therefore, the Court finds that a debtor may not direct allocation of payments for trust fund taxes owed by the debtor.

In the present case, the Debtor has provided in its Plan of Reorganization, that payments made to the IRS are "voluntarily" made and should be allocated to the trust fund obligations of the Debtor first. This provision incorrectly characterizes the trust fund tax payments in bankruptcy, which are involuntary, and does not provide a basis for allowing the Debtor to direct the allocation of payments to the IRS. Consequently, the Objection to Confirmation, filed by the IRS is appropriate and should be granted.

Based on the foregoing, the Court concludes:

(1) The Objection to Confirmation made by the United States of America, Internal Revenue Service should be granted; and

(2) Confirmation of the Debtor's Plan of Reorganization should be denied.

IT IS SO ORDERED.